[No. E015526. Fourth Dist., Div. Two. Dec. 12, 1996.]

LAKE ARROWHEAD CHALETS TIMESHARE OWNERS
ASSOCIATION et al., Plaintiffs and Appellants, v.
LAKE ARROWHEAD CHALETS OWNERS ASSOCIATION et al.,
Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A, B, and D.

COUNSEL

Fiore, Walker, Racobs & Powers, Peter E. Racobs and Margaret G. Wangler for Plaintiffs and Appellants.

Feldsott, Lee & Feinberg, Martin L. Lee and Stanley Feldsott for Defendants and Appellants.

OPINION

McKINSTER, J.—

### FACTUAL AND PROCEDURAL BACKGROUND

The Lake Arrowhead Chalets is a 62-unit residential condominium project. It is governed by the Lake Arrowhead Chalets Owners Association (Condominium Association). Of the 62 units, 24 are operated as time-share facilities. The time-share units are governed by the Lake Arrowhead Chalets Timeshare Owners Association (Timeshare Association).

A meeting of the members of the Condominium Association was held on February 1, 1992, to elect new members of the association's board of directors and to vote on a proposed third amendment to the association's bylaws. Mr. Dave Burdick, a member of the boards of directors of both the Condominium Association and the Timeshare Association, appeared at the meeting, purporting to be empowered to vote on behalf of the owners of the 24 time-share units. Burdick cast the votes of those 24 units against the proposed bylaws amendment, but the Condominium Association refused to recognize either his authority or the validity of his vote. Accordingly, the third amendment was declared to have been adopted by a vote of 36 to 0.

In March of 1992, the Timeshare Association and Bruce Rummer, an individual member of the Condominium Association, sued the Condominium Association and two of its officers and directors, Linda Hanneman and James Genn. As ultimately amended, that action sought (1) a declaration that the third amendment to the Condominium Association's bylaws was invalid, (2) a declaration that a prior second amendment to the bylaws was rescinded, (3) damages against Hanneman and Genn for alleged violations of fiduciary duty, and (4) a variety of injunctive relief. The Condominium Association cross-complained against the Timeshare Association in June of 1992, seeking a declaration that various provisions of the declaration of covenants,

conditions and restrictions under which the Timeshare Association operated were invalid.

In May of 1994, the plaintiffs represented that they had reached a settlement of their dispute with the Condominium Association and applied for a determination that the settlement was in good faith. (Code Civ. Proc., § 877.6, subd. (a)(2).) The Condominium Association contested the settlement. (*Ibid.*) The trial court denied the application in August of 1994.

Meanwhile, in June of 1994, the plaintiffs moved for an order (1) disqualifying defense counsel, Feldsott, Lee & Feinberg, from continuing to represent either the Condominium Association or the individual defendants, and (2) restraining the Condominium Association from continuing to pay the costs of defense of the individual defendants. Both aspects of the motion were denied.

The declaratory relief claim concerning the validity of the third amendment to the Condominium Association bylaws was bifurcated from all other issues. Trial on that issue began on August 18, 1994. At the conclusion of the plaintiffs' case-in-chief, the defendants successfully moved for judgment. (Code Civ. Proc., § 631.8.) In particular, the court determined that the third amendment was valid.

The Condominium Association then dismissed its cross-complaint. Shortly thereafter, the plaintiffs dismissed the remaining causes of action of their complaint. All claims having been resolved either through trial or dismissal, a judgment was entered in favor of the defendants.

Relying on Civil Code section 1354, subdivision (f), the defendants then moved for an award of over $200,000 in attorney's fees. Their motion was denied.

The plaintiffs appeal from the judgment against them. The defendants cross-appeal from the denial of their motion for attorney's fees.

## CONTENTIONS

The plaintiffs contend that the judgment should be reversed because the trial court erred in refusing to approve the settlement with the Condominium Association, refusing to disqualify defense counsel, and finding that the third amendment was valid. On the cross-appeal, the defendants contend that the trial court erred by denying their motion for attorney's fees. In addition, arguing that the plaintiffs' appeal is frivolous, the defendants have moved

for an award of attorney's fees on appeal, pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 26.

DISCUSSION

A., B.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### C.  *The Third Amendment to the Bylaws Is Invalid.*

■   The plaintiffs' principal argument is that the trial court erred on the merits of the only issue tried, i.e., the validity of the third amendment to the Condominium Association's bylaws. In particular, they contend that the amendment is invalid for three reasons: (a) the notice of the meeting at which it was adopted was inadequate; (b) there were insufficient favorable votes to adopt the amendment; and (c) the amendment was not approved by the owners of the time-share units, as required by Corporation Code section 7150, subdivision (b). Finding the last issue to be dispositive, we address it first.

Since the initial adoption of the bylaws of the Condominium Association, they have been amended three times. The first amendment increased the number of directors from five to seven. The second amendment provides that four of the seven directors shall be owners of whole condominium units, while the remaining three directors shall be owners of fractional interests in time-share units. The third amendment, which is the subject of this action, provides that "only timeshare owners/representatives may vote for the three (3) seats on the Board of Directors occupied by the timeshare owners. Only the condominium owners may vote for candidates for the remaining four (4) seats on the Board of Directors."

Subdivision (b) of Corporations Code section 7150 establishes certain restrictions on the powers of a mutual benefit corporation's members to amend its bylaws.[3] In particular, it provides that some amendments, although approved by the members generally, are not effective unless they are also approved by the members of a class. (*Ibid.*) Among the proposed amendments requiring class approval are those which would "[a]uthorize a new

---

*See footnote, *ante,* page 1403.

[3]The statutory restrictions on the power of a corporation's *board* to amend bylaws (Corp. Code, § 7150, subd. (a)), to which the defendants refer, are irrelevant. A board may not amend the bylaws if the bylaws withhold that power. (Corp. Code, § 7150, subd. (c).) Here, the bylaws specify that the power to amend is solely in the hands of the members.

class of memberships" (*id.*, subd. (b)(6)) or "[m]aterially and adversely affect the rights, privileges, preferences, restrictions or conditions of that class as to voting . . . in a manner different than such action affects another class" (*id.*, subd. (b)(1)).

The plaintiffs contend that the third amendment creates a new and disadvantaged class of members, and is therefore ineffective because it was not approved by the members of that new class. They are correct.

" 'Class' refers to those memberships which . . . have the same rights with respect to voting . . . ." (Corp. Code, § 5041.) By specifying that the time-share owners could only vote for the directors who would constitute a minority of the board, while the whole-unit owners would select the board's majority, the third amendment created two classes of members. We cannot accept the trial court's finding to the contrary.

Not only did the third amendment divide the members into two classes, but it materially and adversely affected the voting rights of the minority time-share class. Prior to the amendment, the time-share members of the association, though owners of a minority of the units, had the chance to elect a majority of the board of directors.[4] After the division of the membership into two classes, only the whole-unit owners had that opportunity. Thereafter, the time-share owners could never elect a majority of the board, regardless of how much greater their degree of organization and voter turn-out compared to the owners of the whole units.

The defendants deny that the change in voting rights was adverse to the time-share owners, arguing that in fact the change benefited the time-share owners by guaranteeing that they would always have some representation on the board. They concede, however, that another effect of the amendment would be to prevent the continuation of the practice by which a passive majority (of whole-unit) owners, through their lack of participation, allowed an active minority (the time-share owners) to control the board. Thus, we

---

[4]Since the term of office of directors is only one year, all seven seats are open at the annual election. The election is held at the annual meeting. A quorum for the meeting is 51 percent of the units. Thus, under the pre-amendment bylaws, an election could be decided on just 32 votes. If all 24 time-share unit owners participated in the election and voted cumulatively for 4 candidates, each candidate would receive 42 votes (24 × 7 ÷ 4). If the eight whole-unit owners who attended also voted cumulatively for four candidates, each would receive only fourteen votes. Under the old system, therefore, the time-share units could (and apparently, frequently did) elect a majority of the board because they participated in the election in greater numbers and voted as a block. Under the third amendment, however, the whole-unit members would be ensured of a majority of the board, regardless of how few of them bothered to turn out and vote.

cannot say as a matter of law that the effect of the amendment were entirely beneficial to the time-share owners.[5] Because the amendment confers potential disadvantages as well as potential advantages, the weighing process is reserved for the members of the affected class. (Corp. Code, § 7150, subd. (b).)

Since the owners of the time-share units did not approve the third amendment, it was not validly adopted, and thus is not effective, even though it was approved by a majority of the members. Therefore, we need not decide whether the Condominium Association failed to give adequate notice at the meeting at which the amendment was purportedly approved, or whether there would have been sufficient favorable votes cast by the members to adopt the amendment in the absence of the need for separate votes by class. The judgment declaring that the amendment was validly adopted and effective must be reversed.

D. *The Issue Raised in the Defendants' Cross-appeal Is Moot.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed. Having decided the invalidity of the adoption of the third amendment to the Condominium Association's bylaws as a matter of law, we direct the trial court to enter a declaratory judgment in favor of the plaintiffs.

Hollenhorst Acting P. J., and Ward J., concurred.

---

[5]Indeed, if the amendment were entirely beneficial to the time-share owners and adverse to the whole-unit owners, one would be hard pressed to explain why the time-share owners have spent so much time and attorney's fees to prevent the amendment from going into effect, or why the whole-unit owners have worked so long and hard to enforce it. The Condominium Association's actions speak louder than its words.

\*See footnote, *ante,* page 1403.